IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Fairfield Electric Cooperative, Inc., <br><br> Plaintiff, <br><br> vs. <br><br> DR Horton, Inc., <br><br> Defendant. | C/A No. 3:12-cv-3130-JFA <br><br><br> **ORDER GRANTING PARTIAL SUMMARY JUDGMENT** |

This matter comes before the court on Defendant's Motion for Summary Judgment in a commercial contract dispute. (ECF No. 41). Defendant D.R. Horton ("Defendant") initially moved for summary judgment on two grounds: (1) "Plaintiff has produced no evidence in support of its claim that D.R. Horton breached the contract"; and (2) "the claim made by Plaintiff is barred by the applicable statute of limitations." At the request of the moving party,[1] this court heard oral arguments on August 22, 2013 related only to the second ground—the statute of limitations issue.[2] The parties then submitted additional briefing on September 19, 2013 related to the contract term "initial residential occupancy," as ordered by the court on August 29, 2013. Plaintiff Fairfield Electric Cooperative ("Plaintiff") opposes the motion and argues that, under the discovery rule, the claim was brought within the applicable statute of limitations. For the reasons set forth below, the court grants Defendant's motion in part.

---

[1] "As noted in both D.R. Horton's initial brief and in Plaintiff's responsive brief, the first issue [the breach of contract issue] is not yet ripe for adjudication as the result of additional discovery that is now being conducted by Agreement of the parties. D.R. Horton would therefore ask the Court to accept additional briefing on this matter after the close of discovery, if necessary." Defendant's Reply Brief at p. 1-2 (ECF No. 49).

[2] "TEXT ORDER re … Hearing on … Motion for Summary Judgment set for 08/22/2013, notifying parties the hearing will be limited to the issue of the [s]tatute of [l]imitations." (ECF No. 51).

1

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff is an electric services provider organized and existing under the laws of South Carolina. Defendant is a residential developer and builder organized as a Delaware corporation with its principal place of business in Texas. Plaintiff seeks $80,000 in damages plus costs and Defendant removed the case from state court on October 30, 2012. This court's jurisdiction over the state law breach of contract claim is, therefore, based on diversity, as codified at 28 U.S.C. 1332.

Plaintiff and Defendant entered into an Agreement for Underground Service on May 21, 2004 ("Agreement"). In the Agreement, Plaintiff agreed to install underground electrical service facilities in Lake Carolina Parcel 19 ("Development") and to waive "any charges for the installation of underground electric service facilities within the Development." Agreement ¶ 2. Defendant was the developer of Lake Carolina Parcel 19. The relevant provisions of the Agreement are as follows:

> 3. The Developer shall permit an electric water heater to be the only source of heated water in 95% of all dwellings, buildings or other structures that may be erected or placed within the above described Development *before the initial residential occupancy* of each such dwelling, building or structure. The Developer shall be *solely responsible for ensuring full compliance* with the provisions of this paragraph.
>
> 4. If the Developer should use or permit to be used any water heating source other than electricity furnished by the Cooperative in any dwelling, building or other structure to be located within the above described Development that exceeds 5% of the total number of lots *before the initial residential occupancy* of each lot, then the Developer shall immediately owe and pay to the Cooperative an amount equal to $500 per lot for those lots exceeding 5%.

*Id*. at ¶¶ 3-4 (emphasis added).  Plaintiff alleges that 160 homes in the Development are equipped with gas water heaters in violation of the Agreement, and that Defendant is, therefore, liable under the Agreement to Plaintiff for $80,000 (160 homes X $500 per violation).[3]

The first home subject to the Agreement closed on November 22, 2004, approximately six months after the Agreement was executed.  About one month later, the ninth home subject to the Agreement closed on December 29, 2004; this is the home that—because 160 homes are subject to the Agreement—Defendant asserts would have triggered a breach of the Agreement.[4]  The last home subject to the Agreement closed on April 27, 2010.

Plaintiff first discovered a potential breach of the Agreement in "April-May of 2012" after "a review of its contracts" prompted Plaintiff to perform "a field audit … to determine which homes in Lake Carolina Parcel 19 used gas water heaters."  Plaintiff's Response Brief at p.2 (ECF No. 45).  The field audit is the basis of Plaintiff's allegation that the 160 homes contain gas water heaters; Plaintiff physically visited the homes and checked to see if the homes had a gas meter and ventilation.  If both the gas meter and ventilation were present on the home, Plaintiff inferred[5] that the home had a gas water heater.  It has yet to be established if an electric or gas water heater was installed in each home at the time of initial residential occupancy.[6]  On

---

[3] Counsel represented at the hearing of this motion that, although the Agreement refers generally to "Lake Carolina Parcel 19," 160 homes were firmly subject to the Agreement.  Therefore, Plaintiff incorrectly calculates damages due under the Agreement in its Complaint.  *See* Agreement ¶ 4.  Defendant is only liable for 95% of the lots under the terms of the Agreement.  *Id*.  Therefore, potential damages under the Agreement are $76,000, not $80,000, because Defendant owes damages as to 152 (95% of 160) homes only.

[4] 95% of 160 homes is 152 homes.  Therefore, under Defendant's theory, the Agreement was breached on the close date of the ninth home.

[5] Defendant objects to this inference.

[6] Pursuant to the Fourth Amended Scheduling Order, discovery in the case was scheduled to end August 9, 2013.  However, the court has allowed an additional deposition and the production of "land development files"—which are expected to help the parties determine if the contract was in fact breached—outside of the discovery deadline.  This continued discovery is the basis of the parties' contention that the first issue of Defendant's motion for summary judgment, whether there was a breach of the contract, is not ripe for adjudication.

May 21, 2012, Plaintiff sent Defendant an invoice for $80,000 based on the damages outlined in the Agreement. This suit was filed on September 27, 2012, after Defendant refused to pay.

## II.     LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered when a moving party has shown that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Summary judgment should be granted in those cases where it is clear that there remains no genuine dispute as to material fact and inquiry into the facts is unnecessary to clarify the application of the law. *McKinney v. Bd. of Trs. of Mayland Cmty. Coll.*, 955 F.2d 924, 928 (4th Cir. 1992). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## III.     ANALYSIS

In its Motion for Summary Judgment, Defendant argues that the statute of limitations bars a claim as to all of the homes subject to the Agreement and that, in the alternative, the statute of limitations bars a claim for all but seven of the homes subject to the Agreement. Plaintiff argues that, under the discovery rule, the cause of action did not accrue until 2012 and that, in the alternative, "when Plaintiff should have known of the breach … is reserved for the jury at trial." Plaintiff's Response Brief at p.9 (ECF No. 45). Plaintiff argues that, because "Defendant was solely responsible for ensuring that ninety-five percent (95%) of the homes in the subdivision had electric water heaters installed prior to the initial occupancy," Defendant

4

induced Plaintiff's delay in discovery of the cause of action and that Defendant should, therefore, be estopped from asserting the statute of limitations. *Id*. at p.8. Plaintiff further uses the "solely responsible" provision to argue that Plaintiff acted—by not acting at all for about eight years—with "reasonable diligence" because Defendant agreed to be "solely responsible" for ensuring compliance with the Agreement.

The parties agree that a cause of action for breach of contract must be brought within three years of the date it accrues. S.C. Code Ann. § 15-3-530 (1). The parties also agree that the discovery rule is controlling. "Under the discovery rule, a breach of contract action accrues on the date the injured party either discovered the breach or should have discovered the breach through the exercise of reasonable diligence." *RWE NUKEM Corp. v. ENSR Corp.*, 644 S.E.2d 730, 733 (S.C. 2007). Defendant argues that the Agreement was breached on December 29, 2004, when more than 5% of the homes subject to the Agreement closed, allegedly, with gas water heaters.[7] According to Defendant, Plaintiff did not act with reasonable diligence until 2012, and, therefore, all claims by Plaintiff are barred because the Agreement was breached on December 29, 2004. The court disagrees with this analysis, but does agree with Defendant's fallback position—that each noncompliant initial residential occupancy of a home constituted a separate breach of the Agreement.

The "initial residential occupancy" of a home equipped with a water heating source other than electricity furnished by Plaintiff triggers a breach of the Agreement. That term is not defined in the Agreement. Because of the ambiguity in the record with regard to that phrase, this court ordered additional briefing as to the meaning of "initial residential occupancy" and its relation to the statute of limitations argument in this motion. The parties unambiguously agree

---

[7] Again, Defendant argues that, because there are 160 homes subject to the Agreement, the Agreement was breached when the ninth home closed. (5% X 160 = 8). The ninth home closed on December 29, 2004.

that "the 'Close Date' [of each home subject to the Agreement] is synonymous with 'initial residential occupancy.'" Plaintiff's Supplemental Brief in Opposition to Defendant's Motion for Summary Judgment at p.5 (ECF No. 59). Therefore, if Defendant did breach the Agreement by allowing gas water heaters to be installed at the initial residential occupancy of each home, that breach occurred on the close date of each home.

A critical issue to this motion is: (1) whether *each* "initial residential occupancy" of a home with a heating source other than electric is a separate breach of the Agreement; or (2) if the Agreement was breached only once—when more than 5% of the homes in the Development were initially occupied and equipped with a water heating source other than electric. This court has previously held:

> A breach of contract action generally accrues at the time the contract is breached or broken. Just as a new cause of action accrues each time a rent payment is due, a cause of action for credit due under a lease accrues each time a credit becomes due.

*Richland-Lexington Airport Dist. v. Am. Airlines, Inc.*, 306 F. Supp. 2d 548, 566 (D.S.C. 2002) *aff'd*, 61 F. App'x 67 (4th Cir. 2003). Applying the same principle to this case, Plaintiff accrued a new cause of action each time a water heating source other than electric was present at the initial residential occupancy, or close date, of a home subject to the Agreement.

  i.  *Reasonable Diligence*

Essential to Defendant's argument that Plaintiff failed to exercise reasonable diligence is what Plaintiff did to discover the alleged breach; Plaintiff conducted a review of its contracts and then conducted a "field audit" of the homes subject to the Agreement. Plaintiff did not take these actions until "early 2012," concluding with the $80,000 invoice sent to Defendant in May 2012. Again, the field audit consisted only of Plaintiff observing whether the home had both a gas

meter and ventilation, and then inferring that the home contained a gas water heater, thus breaching the Agreement. Defendant argues that reviewing contracts and conducting a field audit much earlier would have been the exercise of reasonable diligence. Because Plaintiff did not exercise reasonable diligence until 2012—and because a review of contracts and a field audit are easy tasks that could have been completed at any time—Defendant argues Plaintiff did not bring the cause of action within the statute of limitations, at least as to 153 of the homes.

Although Defendant argues that the Agreement was breached only once, Defendant does provide the court with an analysis of which homes would fall within the statute of limitations if the initial residential occupancy of each home led to a separate breach of the Agreement and cause of action. Because the statute of limitations period is three years in this case and the Complaint was filed on September 27, 2012, a cause of action that Plaintiff knew of or should have known of through the exercise of reasonable diligence prior to September 27, 2009, is barred. It is undisputed that only seven[8] homes closed after September 27, 2009, with the last home subject to the Agreement closing on April 27, 2010.

No reasonable juror could find that Plaintiff protected its rights under the Agreement as to the other 153 homes with reasonable diligence, as required by the discovery rule. *Kelly v. Logan, Jolley, & Smith, L.L.P.*, 682 S.E.2d 1, 6 (S.C. Ct. App. 2009) (affirming trial court's grant of summary judgment where, even if plaintiff was ignorant of facts to prove she had a claim against defendant, facts and circumstances could have been known to plaintiff through the exercise of ordinary care and reasonable diligence (citing *Epstein v. Brown*, 610 S.E.2d 816, 818

---

[8] "Going back three years from 9-27-2012, the following Close Dates fall within the statute of limitations: (1) 9-28-2009 (406 Abbeydale Way); (2) 10-8-2009 (409 Abbeydale Way); (3) 10-20-2009 (421 Abbeydale Way); (4) 10-23-2009 (410 Abbeydale Way); (5) 10-23-2009 (441 Abbeydale Way); (6) 11-02-2009 (451 Abbeydale Way); and (7) 4-27-2010 (455 Abbeydale Way)." Defendant's Motion for Summary Judgment at p. 13 (ECF No. 41).

(S.C. 2005) (stating that it is not when a party seeks the advice of counsel or develops a full-blown theory of recovery that the statute of limitations begins to run); *Burgess v. Am. Cancer Soc., S. Carolina Div., Inc.*, 386 S.E.2d 798, 799 (S.C. Ct. App. 1989) ("A party cannot escape the application of this rule by claiming ignorance of existing facts and circumstances, because the law also provides that if such facts and circumstances *could have been known* to the party through the exercise of ordinary care and reasonable diligence, the same result follows.") (emphasis in original))). All Plaintiff had to do was a periodic review of its contracts and a simple "field audit" to determine if Defendant was possibly in breach of the Agreement. Plaintiff's own briefs support the proposition that a review of contracts and a field audit were the exercise of reasonable diligence: "[b]y performing the survey of contracts and field audit, Plaintiff exercised reasonable diligence to discover the breach."[9] Plaintiff's Response Brief at p. 9 (ECF No. 45). There may have been other methods Plaintiff could have used to protect its rights under the Agreement; the fact that dooms Plaintiff's case here is that Plaintiff did nothing for a period of about eight years. Therefore, the court grants Defendant D.R. Horton's Motion for Summary Judgment as to the 153 homes that closed prior to September 27, 2009 because Plaintiff did not bring those claims within the applicable statute of limitations.

    ii.    *Defendant's Covenant to be "Solely Responsible" for Ensuring Compliance with One Paragraph of the Agreement*

Plaintiff argues that the Agreement language "[t]he Developer shall be solely responsible for ensuring full compliance" with one of the two relevant paragraphs[10] of the Agreement (1)

---

[9] Plaintiff argues that performing a survey of contracts and a field audit in 2012 alone was the exercise of reasonable diligence. The court disagrees.

[10] The provision Plaintiff uses to allege $500 per home in damages is in paragraph 4, while the language requiring Defendant to be "solely responsible for ensuring compliance with the provisions of this paragraph" is in paragraph 3.

relieved Plaintiff from its duty to act with reasonable diligence, and (2) estops[11] Defendant from asserting the statute of limitations.  Plaintiff offers no law in support of the first proposition.  In support of the second proposition, Plaintiff quotes the South Carolina Court of Appeals: "[a] defendant will be estopped to assert the statute of limitations in bar of a plaintiff's claim when the delay that otherwise would give operation to the statute has been induced by the defendant's conduct."  *Dillon Cnty. Sch. Dist. No. Two v. Lewis Sheet Metal Works, Inc.*, 332 S.E.2d 555, 561 (S.C. Ct. App. 1985) *overruled on other grounds by Atlas Food Sys. & Servs., Inc. v. Crane Nat. Vendors Div. of Unidynamics Corp.*, 462 S.E.2d 858 (S.C. 1995).  Further, Plaintiff says "[i]t is sufficient that the aggrieved party reasonably relied on the words and conduct of the person to be estopped in allowing the limitations period to expire."  *City of Bedford v. James Leffel & Co.*, 558 F.2d 216, 218 (4th Cir. 1977).  Accordingly, Plaintiff argues that Defendant, through its promise to ensure compliance with one paragraph of the Agreement, induced Plaintiff to delay filing suit.

Defendant correctly points out the absurd consequences of Plaintiff's argument.  Plaintiff essentially argues that "it had zero obligation to act with due diligence to guard its rights under the contract because … D.R. Horton had an affirmative duty to inform Plaintiff of any [breach] … and that by virtue [of] the contract language, itself, D.R. Horton is perpetually estopped from asserting the statute of limitations."  Defendant's Reply Brief at p. 6 (ECF No. 49).  As Defendant points out, Plaintiff's entire argument as to the statute of limitations hinges on the language making Defendant "solely responsible" for ensuring compliance with one paragraph of the Agreement.  Plaintiff points to no conduct by Defendant—other than breaching the

---

[11] The parties do not brief whether the "solely responsible" provision acts as a waiver of the statute of limitations. *See RWE NUKEM Corp. v. ENSR Corp.*, 644 S.E.2d 730, 734 (S.C. 2007) ("A party can waive a statute of limitations defense …by words or conduct.").

Agreement itself—that would have "lulled [Plaintiff] into a false sense of security and induced [Plaintiff] to delay the filing of suit." *Dillon*, 332 S.E.2d at 561.

Defendant's covenant to be "solely responsible for ensuring full compliance" with one paragraph of the Agreement does not somehow relieve Plaintiff of its duty to act with reasonable diligence, and any such interpretation leads to absurd consequences, as briefed by Defendant. The provision does not require Defendant to notify Plaintiff of a breach of the Agreement, it does not constitute a waiver of the statute of limitations defense, and it is not conduct by Defendant that would induce Plaintiff to delay filing suit. Defendant's failure to "solely" ensure compliance with the Agreement is a breach of the Agreement itself, and it does not prevent the statute of limitations from running with regard to a breach of other provisions of the Agreement. For these reasons, the court rejects Plaintiff's equitable estoppel theory.

## IV. CONCLUSION

Because Plaintiff did not act with reasonable diligence to protect its rights under the Agreement, the court grants Defendant's motion for summary judgment as to every home subject to the Agreement that closed more than three years prior to the initiation of this lawsuit. Thus, claims to 153 of the homes subject to the Agreement are dismissed and this court will retain jurisdiction over the remaining seven claims.[12]

IT IS SO ORDERED.

September 25, 2013  
Columbia, South Carolina

Joseph F. Anderson, Jr.  
United States District Judge

---

[12] "[A] court has discretion to dismiss or keep a case when it 'has dismissed all claims over which it has original jurisdiction.'" *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) (citing 28 U.S.C. § 1367(c)(3)). Accordingly, this court may, in its discretion, dismiss all claims because dismissal of all but seven claims in this action would bring the amount in controversy below the $75,000 threshold in diversity cases. Because only seven homes remain, damages are expected to amount to $3,500.

10